1  STEPHEN YAGMAN (SBN 69737)
   filing@yagmanlaw.net
2  (for filings only)
   YAGMAN + REICHMANN, LLP
3  333 Washington Boulevard
   Venice Beach, California 90292-5152
4  (310)452-3200

5  Presented on behalf of Plaintiff and
   Class Representative E. SERIN
6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                   **WESTERN DIVISION**

11

| | |
|---|---|
| 12 **PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED, AND WHOSE RESIDENTIAL VEHICLES WERE TOWED AND IMPOUNDED, AS A CLASS REPRESENTED BY E. SERIN**, as representative of a class of unhoused persons who reside and resided in the streets and on the sidewalks of the City of Los Angeles, | **COMPLAINT** (To Address City of Los Angeles-Practiced, Negative Eugenics[1] and Nazi-Like Conduct, Against Poor People, Civil Rights Violations, RICO Violations, and Fraud, and Damages) |
| Plaintiff, | |
| v. | **CLASS ACTION ALLEGATIONS** |
| **ERIC MICHAEL GARCETTI, GILBERT CEDILLO, PAUL KREKORIAN, ROBERT BLUMENFIELD, NITHYA RAMAN, PAUL KORETZ, NURY MARTINEZ, MONICA RODRIGUEZ, MARQUEECE-HARRIS, MARK RIDLEY-THOMAS, MICHAEL JOSEPH BONIN, JOHN LEE, MITCH O'FARRELL, KEVIN DE LEÓN, JOSEPH BUSCAINO, ERIC R. EISENBERG, JOHN JONES III, JOHN LY, CRIS LIBAN, JAZMÍN ORTEGA, SHIELA TEJADA, GREG** | **JURY DEMAND** |

27

28  _____

[1] Eugenics is the mildest term that could be used to describe defendants' wrongful conduct: both quasi-ethnic cleansing and quasi-genocide accurately could be used.

1

GOOD, AURA GARCIA, MIKE DAVIS, JESSICA M. CALOZA, M. TERESA VILLEGAS, and ONE HUNDRED UNKNOWN NAMED DEFENDANTS, 1-100,

Defendants.

Plaintiff makes the following allegations, on information and belief, on behalf of herself and of putative class members, in support of the this complaint, and to redress and to punish defendants' Nazi-Like wrongful conduct, in confiscating, retaining, and refusing to return to her, her RV, in which she lived:

## JURISDICTION AND VENUE

1. Plaintiff, **E. SERIN**, asserts federal claims, under 42 U.S.C. § 1983 (civil rights) and 18 U.S.C. § 1961-64 (RICO), against defendants, subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of these federal claims, and defendants' conduct affects and interferes with interstate commerce.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and in the City of Los Angeles, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3. Plaintiff is a member of the class of un-housed persons[2] who lived or live on the streets and sidewalks of the City of Los Angeles, and who number in the

---

[2] Federal law defines the terms "homeless" or "homeless individual" or "homeless person" to include:

  **(1)** an individual or family who lacks a fixed, regular, and adequate nighttime residence;
  **(2)** an individual or family with a primary nighttime residence that is a public or private place not designed for or ordinarily used as a regular

2

tens of thousands (about 43,000), without shelter, and whose property, including their tents, and belongings were stolen and never returned by defendants; and defendants are **ERIC MICHAEL GARCETTI**, City of Los Angeles' mayor;

sleeping accommodation for human beings, including a car, park, abandoned building, bus or train station, airport, or camping ground;
**(3)** an individual or family living in a supervised publicly or privately operated shelter designated to provide temporary living arrangements (including hotels and motels paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, congregate shelters, and transitional housing);
**(4)** an individual who resided in a shelter or place not meant for human habitation and who is exiting an institution where he or she temporarily resided;
**(5)** an individual or family who--
**(A)** will imminently lose their housing, including housing they own, rent, or live in without paying rent, are sharing with others, and rooms in hotels or motels not paid for by Federal, State, or local government programs for low-income individuals or by charitable organizations, as evidenced by--
**(i)** a court order resulting from an eviction action that notifies the individual or family that they must leave within 14 days;
**(ii)** the individual or family having a primary nighttime residence that is a room in a hotel or motel and where they lack the resources necessary to reside there for more than 14 days; or
**(iii)** credible evidence indicating that the owner or renter of the housing will not allow the individual or family to stay for more than 14 days, and any oral statement from an individual or family seeking homeless assistance that is found to be credible shall be considered credible evidence for purposes of this clause;
**(B)** has no subsequent residence identified; and
**(C)** lacks the resources or support networks needed to obtain other permanent housing . . . .

42 U.S.C. §11302(a). Plaintiff and class members are within the definition of this section, and choose to call themselves "un-housed," because "homeless" has become a pejorative term.

**GILBERT CEDILLO, PAUL KREKORIAN, ROBERT BLUMENFIELD, NITHYA RAMAN, PAUL KORETZ, NURY MARTINEZ, MONICA RODRIGUEZ, MARQUEECE-HARRIS, MARK RIDLEY-THOMAS, MICHAEL JOSEPH BONIN, JOHN LEE, MITCH O'FARRELL, KEVIN DE LEON, JOSEPH BUSCAINO,** who are City of Los Angeles City Council members; **GREG GOOD, AURA GARCIA, MIKE DAVIS, JESSICA M. CALOZA, M. TERESA VILLEGAS,** who are City of Los Angeles Department of Public Works commissioners; **BARBARA ROMERO,** who is the general manager of the City of Los Angeles Department of Public Works; **MARK PESTRELLA,** who is the director of the City of Los Angeles Department of Public Works; **MICHAEL NELSON FEUER,** who is City of Los Angeles city attorney; and the **UNKNOWN NAMED DEFENDANTS,** whose true identities presently are unknown, who participated in the wrongful acts alleged hereinbelow, and whose conduct is culpable, and whose unknown names will be replaced by their true identities when those true identities are learned, or are persons and/or entities whose true names presently are unknown, and who engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow. All defendants engaged in the same conduct by participating in, facilitating, and making the decisions to enact and to enforce anti-unhoused ordinances, to post Zone ordinances signs and no parking placards, as set forth hereinbelow, and who, specifically in this action, were responsible for the towing, impoundment, confiscation of, and failure and refusal to return to plaintiff, "in a legal parking spot in a location reasonably accessible to plaintiff," her RV. *See Finley v. Garcetti*, 2:21-cv-06003-DOC(KESx), Doc. 208, p. 3, ¶ 1, March 11, 2022, for whose return plaintiff made demand, which demand was refused by defendant Kim.

4. Defendants each and all are sued in their individual capacities, and, for the claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), all defendants are sued in their official capacities only.

5. Plaintiff resided in on a sidewalk adjacent that is used for both intrastate and interstate travel.

6. Defendants and each of them play and played some material role in the acts and/or omissions alleged hereinbelow and in the setting of policies and enforcement of City of Los Angeles ordinances, and/or in running and administering the City of Los Angeles Department of Public Works, and Department of Public Works Bureau of Sanitation and Environment, and/or in the harassment of the un-housed people who live on the streets, and in the takings and stealings of their property, and in the wrongful conduct set forth hereinbelow.

## ALLEGATIONS COMMON TO EACH COUNT

7. Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this pleading.

8. All acts and/or omissions perpetrated and/or engaged in by each defendant in their individual capacities were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiffs and class members, and in clear violation of the federal Constitution and of the California Constitution, and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit.

9. The Eighth and Fourteenth Amendment to the United States to the United States Constitution prohibit the threatening of and/or imposition of any penalties for merely being on, including sitting, sleeping, lying, on public

property, for un-housed human beings who cannot obtain permanent shelter. The Fourth Amendment prohibits the seizures of unhoused persons' property. *See* Doc. 103 in No. 2:21-cv-06003-DOC(KESx), whose contents are incorporated herein.

13.  Sitting, lying, and sleeping are defined as acts or conditions, that are universal and unavoidable consequences of "being human. Un-housed persons' ownership of their property also is a consequence of being human.

14.  Human beings are biologically compelled to rest, whether by sitting, lying, or sleeping.

15. As a result, just as governments may not criminalize the state of being "homeless in public places," government may not "criminalize conduct that is an unavoidable consequence of being unhoused -- namely sitting, lying, or sleeping on the streets," or owning property, including shelter, while existing on the streets.

16. So long as there is a greater number of homeless individuals in the City of Los Angeles than the number of available beds in its shelters, which has for many years been, and presently is, the case, the City of Los Angeles and defendants mayor, council members, commissioners, and administrators of the Department of Public Works Bureau of Sanitation and Environment, cannot threaten, extort, penalize, or prohibit, or threaten or attempt to do so, unhoused individuals, for involuntarily being in, sitting, lying, and sleeping on public property, or confiscating their property. The City official defendants have been told this over, and over, and over, for at least 15 years, since 2006, in *Jones v. City of Los Angeles*, 444 F.3d 118 (9th Cir. 2006), and again in 2014, in *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014), and yet again in 2019, in *Martin v. City of Boise*, 920 F.3d 584, 604 (9th Cir. 2019), all of whose contents are incorporated herein, and in which in *Martin* the City of Los Angeles and defendant Feuer petitioned the United States Supreme Court for a writ of certiorari, which was denied, and which Feuer contended was done so that the

Court could "clarify"[3] the Ninth Circuit's ruling, but none of these precedential rulings, all of which were and are binding on the City and all of its officials and employees, has had any effect on the officials' wrongful behavior. *See* "Using new law, L.A. City Council [all defendants herein] bans homeless encampments at 54 spots," Exhibit 7 in *Lockett*, detailing that just five days before a complaint in one of the *Finley/Lockett* actions was filed, on Oct. 24, 2021, that on Oct. 19, 2021, defendants herein, the mayor, 12 of the City council members, and defendant and defense counsel Feuer, yet again enacted ordinances and counseled on the enactment of ordinances, to ban homelessness, the council members by a 12-2 vote.

17. As long as there is no option of sleeping indoors, and there is not, the City government and defendants may not criminalize indigent, unhoused, people for being outdoors, parking the vehicles in which they exist on City streets, sleeping outdoors, on public property, based on the false premise they these human beings had any choice in the matter.

18. Resisting the need to be somewhere, to eat, to sleep, or to engage in other life-sustaining activities is impossible. Avoiding public places when engaging in these otherwise innocent conducts is impossible: as long as the

---

[3] *See* Exhibit 2 hereto to the SAC in *Lockett*, and which is incorporated herein, a press posting on Feuer's official City website, in which it is stated that "LA is asking the Supreme Court to *clarify* the extent of the City's authority with respect to the conduct of homeless residents who dwell on its streets." (Emphasis added.) Feuer stated that the *Martin* case's "rationale sweeps too broadly, and the opinion is internally inconsistent and unclear[,] [and] leaves jurisdictions like Los Angeles without the certainty necessary to balance intensely competing interests without risking costly and time-consuming litigation." The Court denied the certiorari petition. Yet, *Martin* is not unclear, did not need "clarification," and now here we are with costly and time-consuming litigation, only because defendants, led by Feuer, simply and flatly refuse to comply with *Martin*'s dictates. Feuer and defendants lost, but like former President Trump, they continue to refuse to acknowledge that loss.

unhoused plaintiff and class members do not have a place where they can lawfully be, the challenged ordinances, as applied to them, effectively punish them for something for which they may not be convicted under the Eighth Amendment, and hence, the Fourteenth Amendment, to wit, being, sitting, lying down, sleeping, eating, parking their vehicles, and other innocent conduct, so that the challenged ordinances, both on their faces and as applied against the homeless, are unconstitutional.

19. The use of the City's ordinances criminalizes the simple acts of being outside on public property, when one has nowhere else she or he can be, they penalize the condition of being a human being, and, in that sense are prohibited status crimes.

20. A municipality and its officials may not lawfully or constitutionally criminalize such behavior, consistently with the Eighth Amendment, and hence the Fourteenth Amendment, when no sleeping spaces are practically available in a sufficient number of places and/or shelters.

21. So long as there is a greater number of unhoused individuals in the City of Los Angeles than the number of available beds in shelters, for the unhoused, City of Los Angeles and defendants may not legally enforce ordinances against unhoused individuals, for involuntarily being, sitting, lying, and/or sleeping in any public place, and yet they stubbornly enforce their ordinances.

22. Ordinances violate the Eighth Amendment, and hence the Fourteenth Amendment, insofar as they impose criminal sanctions against unhoused individuals, for being and/or lying down and/or sleeping outdoors, or parking their vehicles where all others legally are permitted to park, on public property, when no alternative shelter is available to them. *Martin* clearly and unequivocally states this, and it is binding on all defendants, who refuse to obey it, yet it is the law.

23. There is no rational basis to prohibit or to punish homelessness. *See* Franz Kafka, *Before the Law*, in *Kafka*: *The Complete Stories* (Schocken, 1971)

("this gate was made only for you. I am now going to shut it."), at 4; *The Problem of Our Laws*, in *The Complete Stories*, at 437 ("the laws were made to the advantage of the nobles from the very beginning, they themselves are above the laws, and that seems to be why the laws were entrusted exclusively into their hands . . . .").

24. To be clear, defendants' so-called "Zone" ordinances, which provide for virtually perpetual street and sidewalk cleanings clearly are pretextual, in that they create the false appearance that their function is cleaning, when in fact and in reality they serve as a fictitious means for defendants to rid the City's streets and sidewalks of the unhoused, and to confiscate their property, as a means to just make them go away or disappear: the higher-up defendants use the Sanitation Department workers to clear away the unhoused's belongings, similarly to the way the Nazis used Jewish people as straw bosses[4] in the Nazi concentration and extermination camps, and the LAPD defendants, enforce this by "standing guard," like Heinrich Himmler's[5] *Geheime Staatspolizei* (the Gestapo) while the Sanitation workers confiscate and steal the unhoused's property, taking it far away for "storage," to a place that the unhoused cannot reasonably reach, and then the property is thrown out. This is the principal means by which defendants attempt to rid the City of the unhoused, making it impossible for them to exist at all, with no tents for shelter, no sleeping gear, and often no personal belongings at all. It is inhumane, horrible, and brazenly fascistic.

---

[4] A worker who has some responsibility, but little authority.

[5] The head of the *Schutzstaffel* (German for "Protection Squads," or "Protection Echelon," the "SS," self-described political soldiers) and the Third Reich's chief of police, from 1936 until his dismissal on May 6, 1945, just 17 days before his suicide on May 23, 1945, as a British prisoner, at an interrogation camp near Lüneberg, Germany.

25.  All of these actions by defendants were done intentionally, in concert, they are coordinated, conspiratorial, and were both attempts to do and the doing of things that constitute fraud, extortion under both state and federal law, and which obstruct justice, all as set forth more fully herein.

26.  Defendants' actions are a form of government-sanctioned eugenics[6], to alter, by government edict -- here, a parking and "Zone" ordinances, a specific population that is disfavored by society and by government -- the unhoused.

27.  In general, eugenics is the practice of arranging a human population to increase or to decrease the occurrence of characteristics regarded as desirable or undesirable.  Here, poverty -- the state of being poor -- is regarded by defendants as being an undesirable characteristic, and defendants' wrongful conduct as alleged herein is designed to decrease the visible manifestations and occurrences of this characteristic in public places. It is akin to the Nazis' and the *Geheime Staatspolizei*'s treatment of the Romani population, and the same treatment of the Romani (colloquially known as "Roma") by many countries in modern-day Europe.

28.  The American eugenics movement was formed during the late Nineteenth Century and continued as late as the 1940s, and to a much lesser extent into the late 20th Century.[7]  (Negative eugenics did not originate with the Nazis,

---

[6] "Eugenics" (/juːˈdʒɛnɪks/ *yoo-JEN-iks*; from Greek εὐ- "good" and γενής "come into being, growing") is a set of beliefs and practices that aim to improve the genetic quality of a human population, historically, and here, by excluding people and and/or groups of people judged to be inferior, or promoting those judged to be superior.  In recent years, the term has seen a revival in bioethical discussions, on the usage of new technologies, such as CRISPR (a gene therapy technique) and genetic screening, with a heated debate on whether these technologies should be called eugenics or not.

[7] Many Americans, especially those born after the WWII, Baby Boomers, and post-Baby Boomer generations, incorrectly believe that Stanford Univ. Professor

10

as commonly is believed to the case: rather, the Nazis got it from the Americans.) The American eugenics movement embraced negative eugenics, as a purported method of improving the human race, and was increasingly discredited as unscientific and racially-biased during the 20th Century, especially after the adoption of its doctrines by the Nazis (in order to justify their treatment of Jews, Romani, disabled people, and other minority groups). Incredibly, eugenics was *not* invented by the Nazis, but rather was first employed by "scientists" in New York, principally Charles Benedict Davenport, a Brooklyn-born, Harvard biology professor, and miscegenationist, who believed that race determined behavior. That is, the Nazis got eugenics from the Americans. It is important to recognize that, in America, eugenics was and is a movement used to reduce an undesired population -- as defendants here use their City of Los Angeles, subject ordinances to push racist, classist, and ableist ideals, rather than a movement that explicitly worked toward the improvement of the human race, against unhoused persons, who are "an undesired population." *See also*, involuntary sterilization, lobotomization, and William Sheldon's somatotyping, all also conceived and pioneered in America. The English-language term "eugenics" translates to "well-born," from the Greek word, "*eugenes*." Eugenics reinforces the prejudices of the

William Bradford Shockley, Jr. was the father of eugenics. He was not. In the 1970s, Shockley contended that a higher rate of reproduction among the less intelligent was having a dysgenic effect, and that a drop in average intelligence would ultimately lead to a decline in civilization. He also claimed that blacks were genetically inferior to whites on an intellectual level -- a view held by the National Football League until June 2021, as a means for denying brain-damaged, Black former players equal compensation to White players in the brain damage class action settlement. (Shockley was a candidate for the Republican nomination in the 1982 United States Senate election in California. He ran on a single-issue platform of highlighting the "dysgenic threat" of some racial groups, including African-Americans, to American society.)

11

time by deeming those with desirable genetic traits such as Whiteness, of higher economic status, and healthy, when, on the other hand, those with undesirable traits are identified as non-White, of lower economic status, or physically or mentally disabled.

29. Defendants are practicing modern-day eugenics against plaintiff and class members. *See also LA Alliance for Human Rights v. City of Los Angeles*, 2:20-cv-02291-DOC-(KESx), Doc. 227 (04/20/21).

30. Plaintiff and class members are un-housed persons who live in the streets of Los Angeles, on sidewalks and elsewhere, and whose property was confiscated, and also of the seizing and throwing away their belongings.

31. These ordinances are colloquially known as "Zone" ordinances because they establish zones from which the unhoused are sought to be and are expelled.

32. Under the pretenses of "Health Hazard Removal" and "Comprehensive Street & Sidewalk Cleaning," the ordinances' thinly-veiled purpose, and their actual effect, is to get unhoused persons off the streets and sidewalks of the City of Los Angeles, and out of everyone else's sight.

33. They dictate "Zone Boundaries," displayed as maps, and then dictate that, in those zones, there will be "Health Hazard Removal" on "Monday, Tuesday, Wednesday, & Friday," during which times City employees from the Sanitation Bureau, backed-up with muscle by LAPD bullies, remove unhoused persons' belongings, including tents, sleeping gear, and other personal items, and that, on "Every Thursday, Between 7 am and 3pm" "During comprehensive cleaning no one will be allowed to remain on a sidewalk." Thus, under this type of ordinance, from Mondays through Fridays, City officials, sanitation workers, and thuggish cops manage to keep all unhoused persons off the sidewalks and streets, and those who remain have all of their belongings stolen by the City and its employees.

34. Truly amazingly, as to any of these Zones that are not in Downtown Los Angeles, an un-housed person would have to travel to a City-operated facility with the Orwellian name of "The Bin," located at 507 Towne Avenue, in zip code 90013.

35.-99. Reserved.

## COUNT 1
**(Fourteenth Amendment, Equal Protection Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)**

100. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits state action that discriminates against a suspect class of persons, and makes a state governmental unit responsible for the equal protection of its citizens, and provides that "nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws.

100a. The Equal Protection Clause contains the right of the people to be exempt from unfriendly legislation, exemption from legal discriminations that imply an inferiority in civil society, and which lessen the enjoyment of rights which others enjoy.

100b. Defendants' subject ordinances violated plaintiff's and class members' right to equal protection of the laws because it is legislation that is unfriendly to them, since it is aimed *only* at them and at no other class of persons, it subjects only them to legal discrimination -- indeed, it cannot be contested that it is only them against whom it discriminated, it implies their inferiority in civil society, and it lessens their enjoyment of rights which other human beings enjoy, and it caused the towing, impounding, and refusing to return plaintiff's RV to plaintiff.

//
//
//

## COUNT 2
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

101. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs' and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 3
### (Conspiracy, against all defendants, in both their individual and official capacities 42 U.S.C. § 1983)

102. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, here confiscating and not returning plaintiff's property.

//
//
//

14

## COUNT 4
### (Fourteenth Amendment, Due Process Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

103.  The Due Process Clause of the U.S. Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

103a.  The defendants' behavior alleged herein is so egregious, so outrageous, that it fairly may be described as shocking to the conscience, and also it is arbitrary and capricious action by the government: it is an exercise of power without any reasonable justification or legitimate governmental purpose: plain and simple, it is government bullying of those who are least able to defend themselves; it violates the decencies of civilized conduct in a civilized society; it is brutal and offensive, and it does not comport with basic concepts of fair play and decency, so that it violates plaintiff's and class members' substantive due process rights, because it is the government using its vast power arbitrarily and oppressively. It deprives plaintiff and class members of property without due process of law, both procedurally and substantively.

## COUNT 5
### (*Monell* Violations, against all defendants, against all defendants, in their official capacities 42 U.S.C. § 1983)

104. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons,

grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs' and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 6
### (Conspiracy, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

105. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 7
### (Fourteenth Amendment, Privileges and Immunities Abridgement Violations, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

106. The Privileges and Immunities Clause of the Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States."

106a. California Welfare & Institutions Code § 17000 provides that

> every city . . . shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein . . . .

106b. This state law provides the substance of a privilege and immunity enjoyed under state law to plaintiffs' and class members, and defendants' conduct violates plaintiff's and class members' Fourteenth Amendment privileges and

16

immunities rights (and this as well violates plaintiffs' and class members' rights to both equal protection and to due process).

106c. Plaintiff Finley is a citizen of Texas.

## COUNT 8
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

107.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 9
### (Conspiracy, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

108. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

## COUNT 10

**(Eighth Amendment, Cruel and Unusual Punishments Infliction Violations, against all defendants in both their individual and official capacities, 42 U.S.C. § 1983)**

109. The Eighth Amendment Cruel and Unusual Punishment Clause provides that "nor cruel and unusual punishments [may be] inflicted."

109a. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the imposition, or threat to impose, penalties for sitting, or lying outside, or parking a motor vehicle on a public street, by unhoused persons who cannot obtain shelter, and whether these activities are defined as acts or conditions, they are inseparable from status, they are universal and unavoidable consequences of being human -- they are one and the same thing, and are involuntary conduct that is inseparable from status, because human beings are biologically compelled to rest, whether by sitting, lying, or sleeping, and all of these things must occur some place, here in on sidewalks, on streets, and in vehicles that are banned by the subject ordinances.

109b. The City of Los Angeles may not, but in fact it does, criminalize and/or punish, threaten to punish, or attempt to punish the state of being unhoused in public places, nor may it criminalize conduct that is an unavoidable consequence of being unhoused.

109c. As long as there is no option of sleeping indoors, defendants may not criminalize indigent, unhoused persons for being outdoors, on public property, like streets, on the false premise that that they had a choice in the matter.

109d. Resisting the need to eat, sleep, or engage in other life-sustaining activities, is unavoidable human activity.

109e. Avoiding public streets when engaging in this otherwise innocent behavior also is impossible.

109f.  Unhoused persons may not be punished, without the punishment being cruel and unusual, because such persons may not be convicted under the Eighth Amendment for innocent conduct.

109g. Prohibiting or interfering with sleeping in a public place as applied to unhoused persons is unconstitutional, as is the taking away of their property and/or housing.

109h.  Here, defendants' application of their ordinances criminalizes conduct that is not criminal, and thus is unconstitutional.

109i.  Ordinances that prevent the use of public property as a temporary or permanent place of dwelling, lodging, or residence, for storage of personal belongings, for cooking, or using temporary structures -- is unconstitutional.

109j.  The subject ordinances and the conduct against plaintiff were and are aimed only at unhoused persons who live or who reside in the streets or on sidewalks, and, as such are unconstitutional.

## COUNT 11
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

110.  Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or

to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs' and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

### COUNT 12
**(Conspiracy, against all defendants, in their official capacities, 42 U.S.C. § 1983)**

111. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

### COUNT 13
**(Eighth Amendment, Excessive Fines Imposition Violations, against all defendants in both their individual and official capacities, 42 U.S.C. § 1983)**

112. The Eighth Amendments' Excessive Fines Clause provides that "nor shall excessive fines [be] imposed."

112a. A fine is "excessive" if it is not proportional to and related to the gravity of the offense that it is designed to punish.

112b. The factors to be considered are the nature and extent of the underlying offense (none), whether the underlying offense is related to other illegal activities (none), whether other penalties may be imposed for the offense (none), and the extent of the harm caused by the offense (none).  Here, defendants created and enforce ordinances to keep rich, habitated folks, who don't want to be bothered by seeing poor, unhoused folks who are forced to live on the sidewalks and streets and in vehicles, and none of the four, evaluative factors is applicable, so that the subject ordinances' and their enforcement -- by confiscating and

stealing unhoused persons' property, and thus depriving a poor person or her or his home, is Nazi-esque, unfounded, draconian, and unconstitutional.

112c. The horror of a rich person having to endure seeing a poor person at all is not a legitimate reason for enforcement of the subject ordinances. It is an ugly, neighborhood beautification project.

113d. Defendants' wrongful conduct, as set forth hereinabove is in violation of the Ninth Circuit's decision in *Pimentel v. City of Los Angeles*, 974 F.3d 917 (9th Cir. 2020) (Eighth Amendment's Excessive Fines Clause applies to municipal parking fines, notwithstanding that California changed its categorization of parking fines from criminal penalties to civil penalties), *as amended on denial of reh'g and reh'g en banc*, in which two of the City defendants' defense counsel herein, defendant Feuer and Gabriel Dermer, lost in the Ninth Circuit.

113e. Defendants theft and refusal to return plaintiff's property constitutes the imposition of an excessive fine.

## COUNT 14
### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

113. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or

to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiff and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 15
**(Conspiracy, against all defendants, in their official capacities, 42 U.S.C. § 1983)**

114. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

115.-141.  Reserved.

## COUNT 16
**(Racketeer Influenced and Corrupt Organizations, RICO, for Fraud, Extortion, Under Both State and Federal Law, and Obstruction of Justice, against all defendants in both their individual and official capacities)**

142. By doing the things alleged hereinabove, and/or aiding or abetting them, defendants thereby engaged in and committed the related RICO predicate acts, with similar purposes, results, participants, victims, and methods of commission, over a long and continuing period of time, going back at least 15 years, with a threat of continued racketeering activity of obstruction of justice, and continue to commit obstruction of justice, all by using instrumentalities of interstate commerce to accomplish their crimes, and thereby are liable under the civil RICO statute.

### Rico Predicate Acts

143. On Oct. 21, 2021, all of David Jacobs' earthly belongings were taken from him, supervised by LAPD officer Monique Contreras, and also supervised and enforced LAPD officer Cook, and beginning on Oct. 21 Jacobs has been

forced to exist and to sleep at night unsheltered, and sometimes in very cold and rainy weather. They stole his personal property and attempted to extort him to not be unhoused.

144. Contreras and other LAPD officers oversaw and enforced the theft of Jacobs' property, and on Oct. 22, 2021, defendant Sgt. Jacobs condoned, approved of, and ratified Contreras' and the other LAPD officers' wrongful conduct.

144<u>b</u>. On Oct. 21, 2021, at approximately 7:30 a.m., plaintiff Jacobs was sitting in front of the tent in which he had slept, when a "waste team" confronted him, backed up by about 10 LAPD thuggish officers, including LAPD officers Contreras, who was in charge of the LAPD contingent, Garcia, and Derek Jacobs, ordered him to remove his belongings from the sidewalk, which he put in the street pursuant to their commands, they then put a yellow tape cordon around his belongings, threw his belongings on the sidewalk, and then confiscated them, telling him that he could retrieve them at the "Bin," at 507 Towne Avenue, Los Angeles 90013, over 17 miles away, in downtown Los Angeles. The belongings stolen from him included his clothing, his wallet, his bank cards, several hundred dollars in cash, and a container, which were all of his belongings, and never were returned to him.

144<u>c</u>. Similarly, on April 12, 2022, at approximately 1:00 p.m., Eric Serin's tent, in which he lived on the sidewalk, and all of his property, including a laptop, his clothing, his sleeping bag, two inflatable mattresses, his work boots, and his tools that he used in his work as an automobile mechanic, including screw drivers and wrenches, were taken from him by Los Angeles Sanitation workers, backed up by thuggish LAPD officers, and put in a garbage truck.

144<u>d</u>. Serin, who resided in a tent on the sidewalk in Playa Vista (just south of Marina del Rey, which is just sougth of Venice Beach), alongside the Jefferson Boulevard un-housed, vehicle dwellers encampment, and his tent and his personal

belongings have been regularly stolen from him by City workers, and enforced by LAPD thuggish officers.

144e. They stole his personal property and attempted to extort him to not be unhoused.

144f. **Extortion** The extortions occurred by defendants stealing the property of Jacobs and Serin, and others to extort them not to be unhoused and not to inhabit the City's streets and sidewalks as unhoused persons.

145. **Obstruction of Justice** The obstruction of justice occurred by defendants preventing plaintiff and class members from exercising their federal constitutional rights, all as set forth hereinabove.

146. Each defendant, in his/her own right, and all defendants together, collectively, as well as their employees, who work in and for the City of Los Angeles, are all enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore are RICO enterprises.

146a. All of the LAPD defendants are a separate enterprise, like a true mafia, extortion/protection-type, racket-enterprise.

147. Each and all of defendants' activities affect interstate commerce, as well as intrastate and interstate travel.

148. Each defendant received and receives income, directly and/or indirectly, by way of insurance premiums, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, pensions, *etc.*, from the pattern of racketeering activity alleged herein, and used and uses that income in the acquisition of an interest in and/or operation of the enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

149.  Defendants conducted and/or participated, and continue to conduct and participate in, said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

150. The pattern of racketeering activities included, and continues to include, a continuous pattern and practice potentially involving activities, including the RICO predicates of fraud, extortion, fraudulent concealment, and obstruction of justice, and defendants' defense of the instant action is and will continue to be and will be a continuation and a part of its RICO schemes, so that those who may participate in the defense, such as defendant Kim, of this action may make themselves liable under RICO.

151. Defendants' associated-in-fact enterprises constitute a present and continuing threat of harm and additional RICO violations.

152. The enterprises' activities have occurred on more than one, and on many thousands of occasions, over at least the past 35 years and have been done on numerous occasions and constitute at least a thousand separate acts, as set forth hereinabove, not including the acts that will be included as part of the defense of the instant action.

153. At least five thousand RICO predicate acts have occurred.

154. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, extortion, and obstruction of justice, and they pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics and participants, they are not isolated events, but are both continuous and systemic, and each and all constitute a continuing pattern of

racketeering activity and constitute a long term threat of continuing racketeering activity.

155. The activities led to defendants' control of and acquisition over the enterprises and resulted in the injuries to plaintiff and class members, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

156. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial employees and/or officers and/or agents of defendants engaged in and condoned racketeering activities.

157. The willful and/or negligent mismanagement of the enterprises, with knowledge by defendants charged with management, and potentially other defendants, that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiff and to class members, as alleged herein.

158. The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

159. Each defendant unlawfully conspired with others, including other defendants, by understanding and agreeing to do, and having a meeting of the minds, and taking overt actions to support the matters hereinabove alleged, to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, continued and continue to do so ,with the aid and assistance of co-conspirators

160. Defendants' actions involve tens of thousands of City of Los Angeles unhoused residents and constitute a pattern of racketeering activity and the predicate acts as set forth hereinabove.

161. Defendants' actions have taken and thereby injured plaintiff's and Serin's and Jacobs' property.

162.-206. Reserved.

**COUNT 17**

**(Fourth Amendment Violations Under § 1983, Against All Defendants In Both Their Individual And Official Capacities)**

207. Plaintiff incorporates herein all of the material in the court's Nov. 11, 2021 minute order and, based thereon and on the allegations set forth hereinabove, allege that defendants violated plaintiff's Fourth Amendment rights, and by virtue thereof, are liable to plaintiff for both injunctive relief and in damages. The minute order is consistent with other controlling Fourth Amendment jurisprudence. Towing a vehicle away from its owner is a seizure, and "[a] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions, and the burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) ("A seizure conducted without a warrant is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' *Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (internal quotation marks and citations omitted). The burden is on the Government to persuade the district court that a seizure comes'"under one of a few specifically established exceptions to the warrant requirement.' *United States v. Huguez–Ibarra,* 954 F.2d 546, 551 (9th Cir.1992).").

## COUNT 18

### (*Monell* Violations, against all defendants, in their official capacities, 42 U.S.C. § 1983)

208. Defendants' wrongful conduct under of color of law occurred so that each defendant knowingly, grossly negligently, recklessly, and with deliberate indifference to the rights allegedly violated, caused to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, and/or took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in the immediately-preceding Count, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, failed properly to train, to supervise, to retrain, if necessary, to monitor, or to take corrective action with respect to themselves and/or their personnel with respect to the types of wrongful conduct alleged in this pleading, so that each one of them is legally responsible for all of the injuries and/or damages sustained by plaintiffs and class members, pursuant to the principles set forth in *Monell v. Dep't of Social Services* and its progeny.

## COUNT 19

### (Conspiracy, against all defendants, in both their individual and official capacities, 42 U.S.C. § 1983)

209. All defendants and each of them understood and agreed, and had a meeting of the minds, that they all would act in combination in the manners described hereinabove and then overt acts were undertaken to carry out their schemes, both hereinabove and hereinbelow.

210.-272.  Reserved.

//

//

## CLASS ACTION ALLEGATIONS

273. Plaintiff is a member of a class, whose defining characteristics are that they are unhoused persons unhoused persons who lived on the streets and sidewalks of the City of Los Angeles and whose personal property was stolen and never returned by City employees.

274. The class may contain about 43,000 people, and the class is so numerous so that joinder of all members is impracticable.

275. There are only common questions of fact and of law with respect to all class members of each class, whose vehicles were and are in imminent jeopardy of being towed, impounded, and not returned, although there is evidence visible of dwelling inside them, and whose members are in imminent jeopardy of being ousted from their habitations on the streets of the City of Los Angeles and their belongings, shelters, and property being stolen and/or taken away, often to a place they physically are unable to reach, possibly to reclaim it.

276. The claims made by the representative party of the class, plaintiff, are typical of the claims of each class member.

277. The representative of the class, plaintiff, more than fairly, vigorously, and zealously will represent and adequately protect the interests of all class members, both themselves and through their zealous attorney.

278. Prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the classes, and defendants have acted and will continue to act on grounds generally applicable to every class member in both classes, and the class questions not only predominate but are the only questions that exist, and this action is the far superior manner to other available methods for fairly and efficiently adjudicating the controversies.

279. Specifically, the class members' interests in individually controlling the prosecution or defense in separate actions do not exist, and there are no anticipated difficulties in managing this class action, especially as to identification of the amount of damages, identification of class members, and providing actual notice to virtually all class members.

280. Therefore, this action is maintainable under F.R. Civ. P. Rule 23(a), & 23(b)(1)(A),(B)(1), (2), and (3).

281. Although there would appear to be no notice requirement as to (B)(1) & (2) classses, the nature of the notice to be provided to class members who live in vehicles would be that the offensive placards would be taken down, and would be decided by the court.

**WHEREFORE**, plaintiff and class members request relief against each defendant as follows:

1. Compensatory damages for all non-RICO violations, in sums in excess of $275,000.00, exclusive of costs and interest;

2. Punitive damages, in a sum to be determined by a jury, and as a percentage of the net worth of each defendant, in a sum sufficient to deter future misconduct, and not less than $1,000,000.00 per defendant;

3. Damages for the RICO violations, and trebling of them;

4. Injunctive relief, according to law;

5. The costs of action and interest;

6. Attorneys' fees; and,

7. Such other relief as is just and proper.

//
//
//
//

1

## JURY DEMAND

2

Plaintiffs demand trial by jury of all issues.

3

**YAGMAN + REICHMANN, LLP**

4

5

By:  /s/  Stephen Yagman

**STEPHEN YAGMAN**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28